IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
NORTHERN DIVISION

| | | |
|---|---|---|
| MARY JANE MINER, as the Personal Representative of the Estate of PATRICK J. MINER, deceased | : : : : | |
| Plaintiff | : : | No. 1:22-cv-254 |
| v. | : : | |
| BNSF RAILWAY COMPANY, f/k/a Burlington Northern and Santa Fe Railway Company | : : : : | JURY TRIAL DEMANDED |
| Defendant. | : | |

COMPLAINT

1. This suit is governed by the Federal Employers' Liability Act, 45 U.S.C. Sec. 51 et seq., (FELA), and Locomotive Inspection Act, 49 U.S.C. Sec. 20701, et. seq., (LIA), which grants this Court jurisdiction over this action.

2. Plaintiff, Mary Jane Miner, (hereinafter "Plaintiff") is an adult individual and resides at 2409 Miller Street, Clovis, NM 88101, and is the widow of Patrick J. Miner and duly appointed, by the Ninth Judicial District of Curry County, New Mexico, the Personal Representative of the Estate of Patrick J. Miner.

3. Plaintiff's husband, Patrick J. Miner (hereinafter "Decedent") died on February 4, 2018.

4. Defendant, BNSF Railway Company f/k/a Burlington Northern and Santa Fe Railway, and successor in interest to Burlington Northern Railroad and the Atchison, Topeka and Santa Fe Railway, amongst other acquired railroads, (hereinafter collectively as "BNSF") was at all times relevant hereto, engaged in interstate commerce in and throughout several states of the United States as a common carrier by rail; and for the purposes hereof did operate locomotives,

Case 2:22-cv-00254-GJF-CG   Document 1   Filed 04/04/22   Page 2 of 8

Case 2:22-cv-00254-GJF-CG   Document 1   Filed 04/04/22   Page 2 of 8

railroad cars and repair facilities and transacted substantial business throughout New Mexico and the various states of the United States.

5. From 1971 to 2013, the Plaintiff's Decedent was employed by the Defendant railroad, or its predecessor in interest as a laborer, painter, carman, fireman and engineer and was acting in the course and scope of his employment with Defendant and was engaged in the furtherance of interstate commerce within the meaning of said Act.

6. From 1971 to 1972, Decedent was employed by BNSF as a laborer and painter in the Defendant's car shop located at the railyard in Clovis, New Mexico.

7. From 1971 to 1972, while working as a laborer and painter in the car shop in Clovis, New Mexico, Decedent's job duties consisted of sweeping up dust and debris on the floor of the car shop, and painting boxcars.

8. From 1971 to 1972, while working as a laborer and painter, Decedent was exposed to excessive amounts of diesel exhaust/fumes, asbestos dust and fibers, and solvents.

9. From 1972 to 1978, Decedent was employed by BNSF as a carman at the car shop located in the railyard in Clovis, New Mexico.

10. From 1972 to 1978, while employed as a carman by BNSF at the Clovis, New Mexico railyard car shop, Decedent's job duties consisted of inspecting, maintaining and repairing freight cars.

11. From 1972 to 1978, while employed as a carman by BNSF at the Clovis, New Mexico railyard car shop, Decedent was exposed to excessive amounts of diesel exhaust/fumes, asbestos, welding fumes, and solvents.

12. From 1978 to 2013, Decedent was employed as a fireman and engineer by BNSF and worked out of Clovis, New Mexico, Belen, New Mexico, and Carlsbad, New Mexico.

2

13. From 1978 to 2013, while employed as a fireman and engineer by BNSF, Decedent's job duties were to inspect the locomotive before use, operate or assist in the operation of the locomotive, and monitor the locomotive's instruments.

14. From 1978 to 2013, while employed as a fireman and engineer by BNSF, Decedent was exposed to excessive amounts of diesel exhaust/fumes, diesel fuel and asbestos.

15. From 1978 to 2013, while employed as a fireman and engineer by BNSF, Decedent was exposed to excessive amounts of diesel exhaust/fumes that were expelled from locomotives.

16. From 1978 to 2013, while employed as a fireman and engineer by BNSF, Decedent would ride in the cab of the engine during operation of the locomotive.

17. The locomotive cabs that the Decedent rode in were not properly maintained or inspected allowing diesel exhaust from the engine and other locomotive engines to infiltrate the locomotive cabs.

18. The locomotive cabs that the Decedent rode in allowed diesel exhaust to infiltrate the cab through improperly maintained and inspected walls, windows, ceilings and floors.

19. From 1978 to 2013, while employed as a fireman and engineer by BNSF, Decedent was exposed to excessive amounts of diesel fuel while refueling locomotives.

20. From 1978 to 2013, while employed as a fireman and engineer by BNSF, Decedent was exposed to asbestos dust and fibers from asbestos wrapped pipes in poor condition in the cab of the locomotive he rode in and from deteriorated asbestos wrapped pipes and/or insulation which were found in the buildings or facilities Decedent was required to frequently enter while working in the railyards in Clovis, New Mexico, Belen, New Mexico and Carlsbad, New Mexico.

21. During the course of Decedent's career with the Defendant railroads, Decedent's exposure was cumulative and occurred at different and variable exposure levels depending on the work location and the precise job to which Decedent was assigned.

22. Decedent's exposure to diesel exhaust/fumes/benzene, diesel fuel, solvents, welding fumes, and asbestos, whether by touch, inhalation or consumption, in whole or in part, caused or contributed to the development of bile duct cancer.

23. As a result of Defendant's negligence, and Decedent's exposure to the aforementioned substances, Decedent was diagnosed with carcinoma of the extrahepatic bile duct in March, 2016, and passed away on February 4, 2018.

24. Plaintiff's Decedent was never informed as to the cause of his cancer.

25. Less than three (3) years before Plaintiff's Complaint was filed she first learned that her husband's cancer was caused or contributed to by the negligence of the Defendant.

COUNT I
Federal Employers' Liability Act 45 U.S.C. §51 et. seq.

26. Plaintiff incorporates by references Paragraphs 1 through 25 as if fully set forth herein.

27. The Decedent's cancer is the result of the negligence of the Defendant railroad in that it utilized known cancer causing materials in its operations, which the Defendant knew, or in the ordinary exercise of ordinary care should have known, were deleterious, poisonous, toxic and highly harmful to its employees' health.

28. Defendant's negligence consisted of:

(a) Failing to use ordinary care and caution to provide the Plaintiff's Decedent with a reasonably safe place in which to work as required by the FELA;

(b) Failing to provide on track machinery with properly designed and adequately functioning ventilation systems;

(c) Failing to take any effective action to reduce, modify or eliminate certain job duties, equipment or practices so as to minimize or eliminate the Plaintiff's Decedent's exposure to toxic materials and carcinogens;

(d) Failing to test railroad facilities, equipment, yards, buildings, and right of ways for the presence of toxic materials and carcinogens;

(e) Failing to engage in follow up monitoring of its facilities, equipment, yards, building, and right of ways for the presence of toxic materials and carcinogens;

(f) Failing to properly remediate known toxic materials and carcinogens from its facilities, equipment, yards, building, and right of ways;

(g) Failing to periodically test employees such as the Decedent for physical effects of exposure to toxic materials and carcinogens and failing to take appropriate action, including advising the Decedent as to the test results;

(h) Failing to warn the Decedent of the risk of contracting cancer or other diseases as a result of exposure to known carcinogens;

(i) Failing to make reasonable efforts to inspect or monitor the levels/amounts of exposure, of the Decedent, to carcinogens;

(j) Failing to provide the Decedent with the knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment to protect him from being poisoned and injured by exposure to carcinogens;

(k) Failing to provide the Decedent with protective equipment designed to protect him from exposure to toxic materials and carcinogens and;

(l) Failing to utilize low emissions fuels such as bio-diesel in its track machinery.

29. The aforesaid occurrences were caused in whole or in part by the negligence of the Defendant and/or the negligence of the Defendant's agents, servants and/or employees.

30. As a direct result of the negligence of the Defendant railroad, the Decedent experienced and endured pain, suffering, inconvenience, irritation, and annoyance; suffered emotional distress; and incurred medical expenses associated with diagnosis and treatment.

31. As a direct result of the negligence of the Defendant, Decedent was diagnosed with bile duct cancer, which caused his death.

32. As a result of the negligence of the Defendant, Plaintiff's Decedent sustained a loss of future benefits including loss of pension benefits due to his premature death.

## COUNT II
### Locomotive Inspection Act 49 U.S.C §20701 et. seq.

33. Plaintiff incorporates by reference Paragraphs 1 through 32 as if fully set forth herein. seeks all damages recoverable under the FELA.

34. Congress enacted the Locomotive Inspection Act, 49 U.S.C. §20701 et. seq. to protect employees of railroads from locomotives that were not in proper condition and safe to operate without unnecessary peril to life or limb.

35. The Locomotive Inspection Act applies to the entire locomotive and all parts and appurtenances.

36. A railroad carrier may use and allow to be used a locomotive, on its railroad line, only when the locomotive and its parts and appurtenant are in proper working condition and safe to operate without unnecessary danger of personal injury. A railroad may only use a locomotive that has been inspected under the regulations set forth by the Secretary of Transportation.

37. A locomotive may only be used by a railroad when it withstands every test prescribed by the Secretary under the Locomotive Inspection Act.

38. Defendant failed to provide a safe locomotive pursuant to the Locomotive Inspection Act when Defendant failed to provide a locomotive:

      a) that did not unreasonably expose Decedent to inhaling diesel exhaust/fumes/benzene and asbestos;

      b) that did not provide Decedent with reasonably safe and sufficient apparel and equipment including respirators necessary to protect

        him from being injured, poisoned, disabled, killed, or otherwise harmed, by inhaling, working with, using, handling, and/or coming in contact with and being exposed to inhalation of diesel exhaust/fumes and asbestos;

   c)   that did not obey appropriate and applicable federal and state regulations and industrial hygiene recommendations intended to protect Decedent from exposure to and inhalation of diesel exhaust/fumes and asbestos.

39. Decedent's illness was caused in whole or in part by the negligence, carelessness, and/or recklessness of the Defendant, by Defendant's failure to abide by the mandates of the Locomotive Inspection Act, generally and more specifically as follows:

   a)   in failing to provide Decedent with a locomotive that did not permit diesel exhaust/fumes/benzene to leak into the cab;

   b)   in failing to provide Decedent with a locomotive equipped with an exhaust system to remove, diesel exhaust/fumes/benzene and asbestos dust from its cab;

   c)   in failing to remove old broken asbestos insulation from the cabs of locomotives Decedent was required to operate and ride in, thus causing him to inhale asbestos dust;

   d)   in failing to conduct tests, in locomotive cabs, to determine the presence of and/or amount of toxic fumes, such as diesel exhaust and asbestos which Decedent was exposed to in the locomotive cabs;

   e)   in failing to follow the mandates of the Locomotive Inspection Act, 49 U.S.C § 20701 and related regulations.

40. 49 CFR §229.43(a) provides that: "Products of combustion shall be released entirely outside of the cab and other compartments. Exhaust stacks shall be of sufficient height or other means provided to prevent entry of products of combustion into the cab or other compartments under usual operation conditions."

41. Defendant is strictly liable in failing to provide Decedent with locomotives incompliance with the Locomotive Inspection Act.

42.     As a direct and proximate result of the Defendant's failure to adhere to the provisions of the Locomotive Inspection Act, Decedent developed bile duct cancer, causing his death.

WHEREFORE, the Plaintiff, Mary Jane Miner, Personal Representative for the Estate of Patrick J. Miner, demands judgment against the Defendant BNSF in a sum in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) and the costs of this action.

BERN CAPPELLI

Dated:  April 4, 2022

BY:   /s/ Shawn M. Sassaman
SHAWN M. SASSAMAN
Attorney for Plaintiff
101 West Elm Street
Suite 520
Conshohocken, PA  19428
(610) 941-4444
(610) 941-9880 fax